1  Law Office of Jeffrey S. Niesen
2  Jeffrey S. Niesen
   1411 W. Pinehill Road
3  Spokane, Washington 99218
   Tel: 509 822-7140
4  Counsel for Defendant
5  Verne Jay Merrell

6                    UNITED STATES DISTRICT COURT
7                    EASTERN DISTRICT OF WASHINGTON

8

9
   UNITED STATES OF AMERICA          Case No. 96 CR 00257 WFN -1
10

11             Plaintiff,

12                                    **DEFENDANT'S SENTENCING**
13      vs.                              **MEMORANDUM**

14
   VERNE JAY MERRELL
15
               Defendant.
16

17  _____/

18      Comes now defendant  VERNE JAY MERRELL by and through his

19  attorney Jeffrey S. Niesen, in accordance with the Court's sentencing order to

20  present for the Court's consideration Defendant's Sentencing Memorandum.

21  Sentencing is scheduled for December 16, 2022 at 9:00 A.M.

22

23                          **Introduction**

24      Verne Jay Merrell (hereinafter sometimes referred to as the "defendant")

25  is before the court for a re-sentencing arising  from the 9th Circuit's mandate

26  ordering the vacation of the Resentenicng Judgment dated September 3, 2020 and a
27
    resentencing..
28

1
2
3

**Criteria for Sentencing**

4

With the Supreme Court's decision in *United States v. Booker* and *United*

5
6
*States v. Fanfan, 125 S. Ct. 738 (2005),* the landscape for sentencing a federal

7
criminal defendant changed.  Previously in fashioning a sentence the Court was

8
bound by the mandatory provisions of the Federal Sentencing Guidelines, the

9
*Booker* and *Fanfan* decisions made it clear that the Guidelines were advisory only.

10
While the guidelines were to be considered and given weight, it was just one of a

11
number of factors the Court was to consider in deciding an appropriate sentence in

12
13
accordance with 18 U.S.C. § 3553.  The ultimate question, taking all of the facts

14
and circumstances into account, is whether the sentence imposed is reasonable.

15
In *United States v. Carty, 520 F.3d 984 (en banc) (9ᵗʰ Cir 2008),* the Ninth

16
17
Circuit reviewed the three *post-Booker* Supreme Court opinions in order to clarify

18
the requirements for the district court's determination of a "reasonable sentence"

19
within the circuit.  The *Carty* court echoed the Supreme Court's dictate that "[a]ll

20
sentencing proceedings are to begin by determining the applicable Guideline

21
range." *Id. 991.*  The other factors to be considered are those criteria set forth in 18

22
23
U.S.C. § 3553(a).  The overarching statutory goal is for the district court to

24
"impose a sentence sufficient, but not greater than necessary" to reflect the

25
seriousness of the offense, promote respect for the law, provide just punishment,

26
afford adequate deterrence, protect the public and provide the defendant with

27
training, medical care and correctional treatment. *Id.*

28

The sentencing court is also directed to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the types of sentences available, unwarranted sentencing disparities, and the need to provide restitution to the victims of the offence. *Id.*

In addition to the above there are other sentencing related matters which the Court must consider in the determination of the appropriate sentence in this case:

1. . The Court should consider whether to run the 924( c) charges concurrently.

2. **Mandatory guidelines.** The original sentencing took place pre-*Booker,* when the guideline application was mandatory. The substantive counts, received concurrent guideline sentences - a total of 168 months - with the 924 (c) 's stacked consecutively thereafter. In order to avoid any *ex post facto* issues the Court should for re-sentencing treat the guidelines as mandatory and confirm the original current guideline sentences that were imposed.

3. **Lack of a special verdict.** One 924 (c) count that remains relies on a determination by the Court that the jury conviction rested on a finding of the use of a destructive device. That has the effect of increasing the sentencing exposure on that count from five or seven years to up to 30 years. A review of the Jury Instructions and the Verdict form establishes that the Jury never found (by way of a special verdict or other means) that the element of a destructive device had been proven. Since that

finding, or lack of finding, increases defendant's exposure to punishment it must have been submitted to the Jury.

**4. The Presentence Investigation Report**

The draft pre-sentence report was reviewed and the objections noted were made known to the Probation officer. That draft report was prepared without interviewing the client.  The final Presentence Investigation Report was filed 11/29/2022 (ECF 481).

**Mr. Merrell's Sentence**

**I.    Base Offense level , Enhancements, Departures**

The defense generally agrees with the computation for re-sentencing provided by the probation officer. As noted in the objections to the PIR the add on for obstruction of justice is unwarranted . Defendant should also get the 3 point level adjustment for acceptance of responsibility which was demonstrated when he was interviewed on March 9, 2020.

**II. 18 U.S.C. 3553(a) factors:**

In accordance with 18 U.S.C. 3553(a) the factors to be considered by the Court  in imposing a sentence which is sufficient, but not greater than necessary are as follows: (1)  the nature and circumstance of the offense and the history and characteristics of the defendant;  (2) the need to reflect the seriousness of the offense, to promote respect for the law and provide just punishment;  (3) to afford adequate deterrence to criminal conduct;  (4) to protect the public from further

crimes of the defendant;  and (5) provide the defendant needed educational or vocational training , medical care or corrective treatment in an effective manner. Each of these criteria in the context of this case will be discussed in turn.

**1. Nature of the Offense and Characteristics of Defendant:**

This is a serious series of crimes arising in 1996 which resulted originally in a 168 month concurrent sentence followed by two life sentences stacked thereafter. At this point the defendant has served approximately 26 years thus satisfying the concurrent sentences.  What remains are two Sec. 924 (c) counts the sentences which must be imposed consecutive to the concurrent sentences

The defendant is a 74 year old man who has been in federal custody since October 8, 1996.  Most of his family has passed on with him still being in touch with one brother.  He has lost contact with his children.  He is well read, basically educated in the military where he served six years on a nuclear submarine.  He was honorably discharged after 8.5 years overall service having achieving the rank of E-6.  Thereafter he was employed as a nuclear engineer at Bechtel and other companies before becoming self-employed.  He has no criminal history.

If released. He has indicated that he will seek to return to Schwenksville , PA to live with Muriel and Ron Clossin a boyhood friend who has invited him to live at his home. He understands that he will be subject to supervised release.  He indicates that he will not have difficulty complying with restrictions or requirements imposed by a probation officer.

While his core beliefs remain unchanged, he has no interest in seeking to change or warn the world of impending doom.   All that he seeks is peace, a safe place to hunker down and live while he attempts to repair his life. In short, he has paid his debt to society and wants nothing more than to live an unremarkable life.

He is mostly self-educated with a scope of knowledge that outstanding.

**2. The seriousness of the offense, promote respect for the law and provide just punishment.**

Twenty-six years have gone by since Verne was imprisoned.  That is sufficient to promote respect for the law and provide just punishment.

**3. Afford adequate deterrence, and, 4.  Protect the Public.**

The sentence that was imposed was adequate to deter defendant and others from offending.  It was more than adequate to protect the public.

**5.  Education and Vocational Training.**

While incarcerated Verne as taken advantage of educational opportunities made available.

Verne is constantly reading.  He is interested in the world and has an insatiable curiosity.  If released, he will continue reading and studying seeking whatever training and opportunities are made available,

**Motion for Variance**

Mr. Merrell has served 26 years the vast majority of that time in solitary confinement.  He was never afforded the opportunity to work within the prison as was done with his various co-defendants.

After 14 years, all of the concurrent sentences that were adjudged have been satisfied.  Defendant has served 12 years of the sentences to be imposed for the 924(c ) violations.

Mr. Merrell is turning 77 years of age in the next several months.  He is increasingly having health problems which includes having Covid 19 multiple times. Due to his age and infirmities there is little to no chance that he will be a future threat to the community or that he will commit future crimes. Throughout his incarceration his disciplinary record is not one of violence even though he has been in exposed to high security penitentiary environments.  As reflected in the attached Affidavit of Stephanie Forrest given his age there is little likelihood that he will live to be released.  His continued incarceration will be a burden to the government that will increase over time with his advancing age and health concerns.

Verne Merrell has learned his lesson.   Whether or not he is further incarcerated depends on what the Court's view of the purpose that incarceration will serve.  The defense view is that it will serve no purpose except to render punishment, a punishment which at this time is no longer needed and which as of now is more than adequate.

Defendant's Sentencing Memorandum                                                    7

## Conclusion

Defendant's further incarceration cannot be justified.  It is recommended that the Court recognize that Verne Merrell is no longer a threat to the public and fashion a compassionate sentence allowing for his release or minimal future incarceration.  He has learned his lesson.  He should be released as soon as possible.

Dated: December 2, 2022          Respectfully Submitted,

Law Office of Jeffrey S. Niesen

s/Jeffrey S. Niesen for

Verne Jay Merrell

## Certificate of Service

I hereby certify that on December 2, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following: AUSA Joseph Harrington, Counsel for the United States of America.

s/Jeffrey S. Niesen (33850)
Law Office of Jeffrey S. Niesen
1411 W. Pinehill Rd.  Spokane WA,  99218
509-822-7140

jsniesen1@yahoo.com

THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 96 CR 00257-WFN |
| v. | ) | |
| | ) | |
| | ) | |
| VERNE JAY MERRELL | ) | AFFIDAVIT OF |
| | ) | STEPHANIE L. FORREST |

I, Stephanie L. Forrest, hereby declare under penalty of perjury that the following is true and correct:

<u>**STATEMENT OF EXPERTISE**</u>

1. I am the founder of Carolina Recovery and Reentry Consultants, LLC, which I started after retiring from the Federal Bureau of Prisons (BOP). I have worked with federal offenders for over 20 years and have worked in assessing the needs of persons related to addiction, social services, and the justice system for over 30 years.

2. I have been employed within the field of addiction for more than 33 years, with 21 years employed by the BOP working in classification, correctional programs, and treatment. During my career, I managed a caseload of individuals as a Correctional Treatment Specialist. In that capacity, I was responsible for inmate counseling, security classification, program placement/evaluation, re-entry, and residential treatment. This involved managing inmates with diverse types of sentences as well as D.C. Superior Court offenders. I have worked in Minimum (camp), Medium, and High security units. On several occasions, I was responsible for training staff in the southeast region in the Residential Drug Abuse Program (RDAP). Prior to working at the BOP, I was employed by the South Carolina Alcohol and Drug Abuse Commission, and I am currently contracted by the Commission to provide community treatment services. I have expertise in interpreting BOP records and identifying release/re-entry needs to aid in successful reintegration into society.

1

3. I hold a Bachelor of Arts in Psychology, an Associate's Degree in Criminal Justice, and a Master of Education in Community and Occupational Programs. I am a Licensed AddictionCounselor, Advanced Alcohol and Drug Counselor, Master Addiction Counselor, Certified Criminal Justice Specialist, Certified Employability Specialist, and Certified Drug Treatment Specialist.

4. A true and correct copy of my curriculum vitae is attached as Exhibit A. I have personal knowledge of the facts stated herein and can testify competently to them if called as a witness in this matter. My declaration is meant to not only provide information to the Court from his records, but also contextualize the environment in which Mr. Merrell has found himself while incarcerated.

## ENGAGEMENT

5. I was retained by attorney Jeffrey S. Niesen, who is representing Mr. Verne Jay Merrell, to documents related to Mr. Merrell's pending resentencing. My observations and opinions are focused on the environment in which he has lived during his incarceration, his adjustment, his conduct, and his program participation from a correctional treatment perspective.

## OVERVIEW OF FINDINGS

6. Mr. Merrell has been in continuous custody since October 8, 1996, and as of the writing of this report been incarcerated for over 26 years. He is currently 77 years old. He is currently housed at the Spokane jail pending sentencing.

7. To assist defense counsel and Mr. Merrell, I provide this report with limited current information because, due to time constraints, Mr. Merrell was not personally interviewed.

8. While the information is limited, I wanted to fulfill the request by counsel to assist with this report in the best manner that I could, based on the information that I had.

9. The information I provide in this report is based on my experience and the Presentence Report provided by counsel.

## SECURITY CLASSIFICATION/PUBLIC SAFETY FACTORS

2

10. At sentencing, defendants are assigned a Security Classification by the BOP to determine the appropriate institution for housing during the term of incarceration. Some of the factors used in this classification process include age, history of violence, previous escapes, criminal history, and severity of the instant offense. Each factor has a corresponding point value. Once the points are totaled, the sum is matched to a point matrix associated with differing security levels.[1]

11. Mr. Merrell is currently housed in Special Unit Housing at Nevada Southern Detention Center. While I was not provided information related to Mr. Merrell's current security classification, those with Life sentences typically are placed in high security prisons.

## DISCIPLINARY HISTORY
## AND INSTITUTIONAL CONDUCT

12. The BOP has an extensive Program Statement outlining its disciplinary policy, which lists prohibited acts and a range of sanctions that can be imposed because of a violation. The list of prohibited acts is divided into four separate categories based on severity: Greatest, High, Moderate, and Low.[2]

13. In reviewing Mr. Merrell's Disciplinary record as provided in the Presentence Report, dated November 15, 2022, he has received a total of fourteen (14) incident reports during his 26 years of incarceration, all of which appear to be Moderate Level and none involving violence. I make this observation relying on the descriptions provided in the Presentence Report. He has had no disciplinary infractions in nearly 9 years.

14. Following is a listing of disciplinary infractions reported in Mr. Merrell's Presentence Report that are stated to be from his BOP records.

   • November 10, 1997, Refusing to obey an order (provide blood sample for health services). He was sanctioned by loss of commissary privileges for 30 days.
   • November 18, 1997, Two violations of refusing to stand for count. He was sanctioned by having his personal property impounded for 90 days and losing commissary privileges for 180 days.

---

[1] BUREAU OF PRISONS, P5100.08, PROGRAM STATEMENT: INMATE SECURITY DESIGNATION AND CUSTODY CLASSIFICATION, CPD/CPB (Sept. 4, 2019).

[2] *Id.*

3

- November 19,1997, Refusing to stand for count. He was sanctioned to 30 days in disciplinary segregation.
- December 29,1997, Refusing to stand for count a fourth time. He was placed in disciplinary segregation for 30 days, his personal property was impounded for 9 months, and he lost social telephone privileges for 6 months.
- On January 23,1998, Refusing to stand for count. He was sanctioned to serve 30 days in disciplinary segregation and lost social visits for 9 months.
- February 24,1998. Refusing to obey an order. As a result he lost commissary and radio privileges for 15 days.
- August 15, 2006, Refusing work/program assignment. As a result, he lost commissary privileges for 30 days.
- December 13, 2006, Refusing a work/program assignment. As a result, he lost commissary for 60 days and was placed on phone restriction for 60 days.
- September 3, 2008, Refusing to obey an order. The defendant was placed on 30 days phone restriction.
- September 9, 2009, Refusing to obey an order (refusing a purified protein derivative (PPD) test. The defendant lost commissary privileges for 30 days.
- October 25, 2010, Refusing to obey an order (refusing PPD test). He was sanctioned to 15 days in disciplinary segregation, 30 days loss of commissary privileges, and 30 days loss of phone privileges.
- November 7, 2011, Refusing work/program assignment (refusing PPD test). The defendant lost commissary privileges for 30 days for
- August 12, 2013, Refusing physical test/exam (refuse TB test injection).the defendant was sanctioned to 30 days in disciplinary segregation (suspended for 180 days), and loss of visitation privileges for 30 days
- February 10, 2014, Refusing physical test/exam (refused to take part in PPD testing). As a result. He lost phone and visitation privileges for 30 days.

## **WORK HISTORY**

15. No work history was provided for review; however, inmates are usually required to work unless they cannot due to physical limitations. It was noted by Mr. Merrell counsel, while housed at ADX in Florence, CO, he was kept in solitary confinement in Special Housing and was precluded any work assignment. Prior to incarceration, he served in the United States Navy and was honorably discharged after eight and a half years of service. While in service he participated in the Navy Nuclear Program and upon his military discharge he reported employed in the commercial nuclear field, construction, and truck repair.

4

## EDUCATIONAL AND VOCATIONAL PROGRAMS

16. While BOP staff may recommend certain programming for inmates, there are no
mandatory educational programs in the BOP except for the General Education Diploma
(GED) program. According to the PSR, Mr. Merrell had obtained a high school education
prior to entering prison.

17. Mr. Merrill, according to a BOP Education Transcript I reviewed, completed the following
classes:

    Intermediate Drawing
    Basic Drawing Techniques
    Advanced Crochet
    Advanced Charcoal
    Dynamic Shadow And Perspective
    Watercolor Pencil
    USP Crocheting Class
    Basic Charcoal
    Beading Class Intermediate
    Lockdown Units Food Labels Adult Continuing Education
    Lockdown Units Investing Adult Continuing Education
    Lockdown Adult Continuing Education WHERE ARE THE JOBS?
    Overview Of Credit
    Lockdown Unit Adult Continuing Education - Interviews
    Customary Measurement
    BA Unit Adult Continuing Education HIST OF US 4
    BA Unit Adult Continuing Education HIST OF US 3
    BA Unit Adult Continuing Education HIST OF US 2
    BA Unit Adult Continuing Education HIST OF US 1
    BA OUT OF CELL BOOK CLUB
    Lockdown Unit History of China 3
    Lockdown Unit History of China 2
    Nonviolent Communication
    Lockdown Unit History of China 1
    Beginning Crochet
    History of the American West
    Origami Class
    Stretching
    The Life of Abraham Lincoln
    Adult Continuing Education Robotics
    Adult Continuing Education History's Great Voyages
    Adult Continuing Education The Black Death
    Adult Continuing Education Weather Paper based
    Adult Continuing Education Pharaohs of Ancient Egypt

5

Polar Explorations

## **RELEASE/REENTRY PLAN**

18. Part of successful reentry is the ability to have a reentry plan to assist in the transition from prison to living in the community. In reviewing the Presentence Report, Mr. Merrell stated to US Probation that he identified Ron and Merial Clossin as individuals who have invited him to reside in their home located in Schwenksville, Pennsylvania.

19. Support will be provided by the Community Correctional Center programs providing support for reentry are also available which would include housing, transportation, applying for assistance for physical and mental health needs, obtaining current identification, and programs also helping support and provide for other basic needs.

## **CONCLUSION**

20. Mr. Merrell is, like many inmates in federal prison, aging, suffering the effects of aging and has little prospect of completing a long-term sentence. *"Elderly prisoners tend to have the same physiological age and health concerns as individuals who are 10 to 15 years older than them, so they require more care at a younger age. As a result, correctional facilities must spend more money to care for aging inmates".* [3]

21. In is noted in a reviewed article, *"Many correctional facilities are considering releasing elderly inmates. This initiative is generally supported by research. A study by the United States Bureau of Justice Statistics indicated that older prisoners are substantially less likely to engage in additional criminal behavior after they are released from prison compared to younger prisoners. Numerous other studies have reaffirmed that age is one of the most reliable predictors of recidivism and that elderly prisoners have lower rates of re-arrest than younger prisoners.* [4]

22. According to a study by Human Rights Watch, *"prisons were never designed or intended to be geriatric facilities." Compared to their counterparts in the community, older prisoners have a greater incidence of illness, disease, disability and mental health diagnoses.* [5]

---

[3] How the aging prison population challenges correctional facilities (corrections1.com) 5/1/2018, Dr. Michael Pittaro, Faculty Member, Criminal Justice at American Military University

[4] Id.

[5] Id.

23. Mr. Verne would be releasing to his sentencing district if considered for Compassionate Release. It was stated in his PSR, he has been offered an opportunity to reside with the Clossin family in Schwenksville, Pennsylvania. However, immediately upon release, support will be provided by the Community Correctional Center determined by the BOP Central Office Community Correctional staff. Programs providing support for reentry are also available which would include housing, transportation, applying for assistance for physical and mental health needs, obtaining current identification, and programs also helping support and provide for other basic needs.

Executed on this 2st day of December 2022

Stephanie L. Forrest

7

# Curriculum Vitae

Stephanie Landers Forrest
Email: stephanie@prisonology.com
Telephone: 803-480-0588

## **Employment History**

November 2020 - Current: **Prisonology, LLC**, Consultant, **www.Prisonology.com**

October 2019 - Current: **Carolina Recovery and Reentry Consultants, LLC**, Founder and Consultant, North Augusta, South Carolina

March 2017 - Current: Cornerstone Treatment Center, **Clinical Counselor**, Greenwood-Edgefield-Abbeville-McCormick, South Carolina.

- Provide counseling services to an identified population for Adult/Adolescent group counseling
- Work closely with agencies such as Probation and Parole, Department of Juvenile Justice, Law Enforcement, School Districts, and Department of Social Services
- Develop and Update client's treatment plans for 90-day reviews.
- Write weekly treatment notes in client's service records
- Perform alcohol and drug screens to monitor client's sobriety
- Provide Biopsychosocial assessments to determine treatment protocol and provide treatment

April 1998 - May 2019: Department of Justice/Federal Bureau of Prisons, **Case Manager/Residential Drug Treatment Specialist,** (Retired), Edgefield, South Carolina

- Case Management related duties responsible for the counseling, classification, and preparation of inmates for reentry.
- First staff member selected to establish and provide services for the Residential Drug Abuse Program (RDAP) at FCI Edgefield/Satellite Camp
- Special expertise with RDAP and 3641(e) early release such as determining eligibility and administering Biopsychosocial assessments.
- Selected to train Southeast Regional staff in the process of providing (RDAP) Modified Therapeutic Community (MTC) treatment
- Coordinated and Implemented presentations and skill-based instruction/groups on the following topics: Stages of Change, Rational Thinking, Criminal Lifestyle, Living with Others, Lifestyle Balance, Recovery Maintenance, and Transition/Reentry
- Developed and provided an inmate training program concentrating on employment skills and reentry

8

- Developed and implemented an award-winning juvenile awareness program (WAKE-UP) which collaborated with the South Carolina Department of Juvenile Justice and various youth services and group homes around the state
- Provided individual and group counseling/therapy to inmates with DSM-5 alcohol and drug use disorder diagnosis; as well as dual diagnosed individuals
- Responsible for working various correctional corrections posts through the prison including inmate housing units, compounds, towers, and perimeter in High/Medium security (USP/FCI) and Minimum security (SPC) capacity
- Worked closely with federal and state agencies in an effort to assist with a smooth transition of inmates into their communities and families
- Worked in minimum, medium, and high security units

September 1989 - April 1998: Saluda Alcohol and Drug Abuse Commission/
Saluda School District, **Child & Adolescent Services Director / Intervention Specialist**, Saluda, South Carolina

- Coordinated, developed, and implemented intervention services for at risk youth
- Wrote and implemented the district discipline plan and Hearing Officer Enforcement polices for district schools
- Coordinated and implemented summer behavior management training program and maintained yearly grant for South Carolina Drug Free School and Communities grant.
- Coordinated and assisted in the implementation of the district's alternative school and D.A.R.E. program
- Liaison for Department of Juvenile Justice

## Education

University of South Carolina-Aiken
Bachelor of Arts: December 1984
 Major: Psychology
 Minor: Sociology

**Associate of Science: December 1984**
 Criminal Justice

University of South Carolina-Columbia
Masters of Education: December 1997
 Community and Occupational Counseling Programs

## Licensure/Certifications

***Licensed Addiction Counselor***
*SC Board of Examiners #149*

9

**Advanced Alcohol and Drug Counselor**
*SCAADAC #1807265*

**Certified Addiction Counselor II**
  SCAADAC #1807265

**Master Addiction Counselor**
  NAADAC  #510518

**Certified Criminal Justice Specialist**
  American College of Certified Forensic Counselors

Certified Employability Specialist
  Department of Justice

**Certified Drug treatment Specialist**
  Department of Justice

**Certified Trauma Informed Care Professional**
  South Carolina Commission on Alcohol and Drug Abuse

**Awards/Recognition**

**Resolution of Recognition, South Carolina House of Representatives** (June 4th, 1992) for "outstanding contributions as a member of the Commission on Alcohol and Drug abuse, dedicated to helping citizens overcome problems caused by alcohol and drug abuse: commending this skilled professional working unselfishly and caring manner to help solve the serious and persistent problems of abuse of alcohol and drugs that contribute to the dissolution of families, increased crime, death on our streets and highways, and untold suffering both by those who abuse and those whom they come in contact with".

**Honor Graduate** (1998), FLETC, Federal Law Enforcement Center, Glynco, Georgia

**Outstanding Employment Performance**, Federal Correctional Institution, FCI Edgefield, SC (1999-2019)

**Outstanding Employee of the Month**, Federal Correctional Institution, FCI Edgefield, SC (1999, 2009, 2011)

**Champion for Children Award** from the South Carolina Department of Juvenile Justice (2008)

10